

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

TIMOTHY DORSEY

No. 17 CR 299
No. 19 CR 299

Judge John J. Tharp, Jr.

*FILED*

*APR 25 2019* AK

*JUDGE JOHN J. THARP, JR.*
*UNITED STATES DISTRICT COURT*

## **PLEA AGREEMENT**

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant TIMOTHY DORSEY, and his attorney, JOSHUA B. ADAMS, is made pursuant to Rule 11 and Rule 20 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### **Charges in This Case**

2.     Defendant has been charged in two separate criminal matters:

a.     In 17 CR 299, filed and pending in the Northern District of Illinois; this indictment charges defendant with five counts of knowingly transporting individuals in interstate commerce with the intent that such individuals engage in prostitution, in violation of Title 18, United States Code, Section 2421 (the "Illinois Indictment").

b.     In 19 CR 299, filed in the Middle District of Georgia and now pending in the Northern District of Illinois; this indictment charges defendant with one count of knowingly transporting an individual in interstate commerce with the intent

that such individual engage in prostitution, in violation of Title 18, United States Code, Sections 2421 and 2 (the "Georgia Indictment").

3.     Defendant has read the charges against him contained in the Illinois Indictment and the Georgia Indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the Illinois Indictment, which charges defendant with knowingly transporting Individual A in interstate commerce, from the state of Illinois to the state of Texas, with the intent that such individual engage in prostitution, in violation of Title 18, United States Code, Section 2421, and the Georgia Indictment, which charges defendant with knowingly transporting Individual B.H. in interstate commerce for the purpose of prostitution, in violation of Title 18, United States Code, Sections 2421 and 2. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

### Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Count One of the Illinois Indictment and the Georgia Indictment. In pleading guilty, defendant admits the following facts and that those facts establish his

2

guilt beyond a reasonable doubt, constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

      a.      With respect to Count One of the Illinois Indictment:

On or about June 24, 2014, in the Northern District of Illinois and elsewhere, defendant knowingly transported Individual A in interstate commerce, from the state of Illinois to the state of Texas, with the intent that such individual engage in prostitution, in violation of Title 18, United States Code, Section 2421.

Specifically, between no later than in or around 2011 and continuing until at least in or around September 2015, defendant ran a multi-state sex trafficking operation using primarily adult males. Defendant placed advertisements online to recruit men to work for his sex trafficking operation. The advertisements sought men to provide sensual/erotic massages but did not indicate that sex acts would be required. When men responded to his ads, defendant conducted an in-person interview during which he required that the men provide him with an all-nude massage culminating in the massage of his penis to ejaculation. Defendant told his recruits that they would earn lots of money performing these sensual/erotic massages.

Defendant's recruits provided customers with sensual/erotic massages that concluded with commercial sex acts, principally the massage of the customer's penis to ejaculation, in exchange for money. Defendant marketed the sensual/erotic massage services on classified advertising websites. In these ads, defendant did not explicitly

promise that his recruits would perform sex acts. Instead, defendant used code words, such as "explosive finish," to convey that sex acts would be included with the sensual/erotic massage. Defendant communicated directly with potential customers over the telephone and by text message, and promised that his recruits would provide additional sex acts for money.

In furtherance of his sex trafficking operation, defendant transported his recruits throughout the United States, including Arizona, California, Colorado, Georgia, Illinois, Michigan, Missouri, Nevada, and Texas. In order to transport his recruits across state lines, defendant booked and paid for their airline travel, bus travel, and hotel stays. Defendant also provided his recruits with vehicles to travel to and from customer appointments, including a 2009 Dodge Challenger, Vehicle Identification Number: 2B3LJ74WX9H583625, bearing Illinois registration E996207.

Defendant booked the sensual/erotic massage appointments with customers, typically over the phone, text message, or e-mail. Defendant set the price that customers would pay for a sensual/erotic massage appointment. Once an appointment was booked with a customer, defendant provided his recruits with instructions concerning, among other things, the timing and location of the appointment. Defendant collected half of whatever his recruits were paid by a customer for a sensual/erotic massage appointment. Defendant monitored customer complaints regarding his recruits, and would reprimand them if he believed that they were either not providing defendant with

his full portion of the illicit proceeds or not providing what defendant believed was superior customer service.

Defendant admits that he recruited Individual A, Individual B, Individual C, Individual D, and Individual E to work for his sex-trafficking operation, and that he paid to send Individual A, Individual B, Individual C, Individual D, and Individual E to travel around the country to perform sensual/erotic massages ending in commercial sex acts to customers who responded to defendant's online advertisements. Defendant further admits that he controlled the terms, timing, and location of such appointments and received half of whatever Individual A, Individual B, Individual C, Individual D, and Individual E earned from the appointments.

Those trips included the following: (a) defendant booked and paid for an airline ticket for Individual A to travel from Chicago, Illinois, to Dallas, Texas, on or about June 24, 2014; (b) defendant booked and paid for an airline ticket for Individual B to travel from Chicago, Illinois, to Atlanta, Georgia, on or about February 11, 2015; (c) defendant instructed Individual C to travel from Georgia to Illinois in April 2015, and booked and paid for a hotel room for Individual C in Rolling Meadows, Illinois, from between on or about April 16, 2015, through on or about April 23, 2015; (d) defendant booked and paid for an airline ticket for Individual D to travel from Chicago, Illinois, to Houston, Texas, on or about June 11, 2015; and (e) defendant instructed Individual E to travel from Texas to Illinois in June 2015, and booked and paid for a hotel room for Individual E in Schaumburg, Illinois, from between on or about June 16, 2015, through on or about June

29, 2015. For each of these instances, defendant paid and arranged for the travel, knowing that his recruits would engage in commercial sex acts when they arrived. Also, for each of these instances, commercial sex acts in fact took place once the recruits arrived in the various locations. After each commercial sex act was performed, the recruit was paid and a portion of that money was in turn paid to defendant.

In addition to employing Individual A, Individual B, Individual C, Individual D, and Individual E, between at least 2011 and September 2015, defendant also employed at least eight additional men in his sex-trafficking operation. Using the general method described above, defendant sent each of these men to travel across the country to perform commercial sex acts in exchange for money, and defendant received a percentage of the amount earned by his recruits for the performance of these commercial sex acts.

      b.     With respect to the Georgia Indictment:

Beginning on or about November 8, 2016, and continuing until on or about December 6, 2016, in the Valdosta Division of the Middle District of Georgia, and elsewhere, defendant did knowingly transport Individual B.H. in interstate commerce for the purposes of prostitution, in violation of Title 18, United States Code, Sections 2421 and 2.

Specifically, between on or about November 8, 2016, and continuing until on or about December 6, 2016, defendant ran a multi-state sex trafficking operation using an adult female, Individual B.H. Defendant marketed Individual B.H.'s commercial sex

6

services to customers on classified advertising websites, including Backpage.com. In these ads, defendant did not explicitly promise that Individual B.H. would perform sex acts. Instead, defendant used code words, such as "happy ending," or "he," to convey that sex acts would be included with the appointment. For example, on or about December 6, 2016, defendant posted an advertisement on Backpage.com marketing commercial sex services in the Valdosta, Georgia area that was captioned, "Trinity—cute white girl here today only!—$100/he—25." Along with photographs of Individual B.H., the body of the advertisement provided:

> Hey guys! Trinity from up north looking for new friends. I am a fun and Friendly lady who likes to put a smile on people's faces. Private times, drinking buddy, movie date, overnights, all available. Text me for immediate response always ready, day or night. Text trinity at XXX-XXX-2898. PICS ARE 100 PERCENT ACCURATE AND CURRENT!!! I AM NOT AFFILIATED WITH LAW ENFORCEMENT!! I AM INDEPENDENT

Defendant communicated directly with potential customers over the phone and by text message, and promised that Individual B.H. would engage in sex acts in exchange for money. Defendant set the price that customers would pay for an appointment and provided customers with information concerning, among other things, the timing and location of the appointment. For example, on or about December 6, 2016, an individual who, unbeknownst to defendant, was an undercover Valdosta Police Department officer, texted defendant in response to one of his ads on Backpage.com. The undercover officer asked defendant if Individual B.H. was available and, if so, how

7

much the appointment would cost. Defendant responded that Individual B.H. was available and that a "full service" appointment would cost $60. Asked whether a "full service" appointment included a "blow job," referring to oral sex, defendant responded that it did. Defendant provided the undercover officer with a time and hotel location for the "full service appointment." Defendant dropped Individual B.H. off at the hotel and parked in a lot so he could supervise Individual B.H. When the undercover officer showed up, Individual B.H. was present at the hotel.

In furtherance of his sex trafficking operation, defendant transported Individual B.H. throughout the United States, including Florida, Georgia, Missouri, North Carolina, Oklahoma, Texas, and Washington D.C. In order to transport Individual B.H. across state lines, defendant booked and paid for her rental cars and hotel stays. Defendant also drove Individual B.H. across state lines to engage in prostitution. Once an appointment was booked with a customer, defendant provided Individual B.H. with instructions concerning, among other things, the timing and location of the appointment. Defendant collected a portion of whatever Individual B.H. was paid by a customer for the appointment.

## Maximum Statutory Penalties

7.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count One of the Illinois Indictment and the Georgia Indictment each carry a maximum sentence of 10 years' imprisonment and a maximum fine of

$250,000. Defendant further understands that the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

      b.     Defendant understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

      c.     In accordance with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed. Defendant further understands that, pursuant to Title 18, United States Code, Section 3014, defendant will be assessed an additional $5,000 if the Court determines that he is a non-indigent person.

      d.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 20 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, a period of supervised release, and special assessments totaling $10,200.

### Sentencing Guidelines Calculations

8.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal

conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b. **Offense Level Calculations**.

<u>The Illinois Indictment</u>

i. The base offense level is 14, pursuant to Guideline § 2G1.1(a)(2).

ii. The offense level is increased by five levels because the offense (including relevant conduct) involved more than five victims, pursuant to Guidelines §§ 2G1.1(d)(1) and 3D1.4(a).

iii.     The offense level is increased by two levels because defendant was an organizer, leader, manager, or supervisor of the criminal activity, pursuant to Guideline § 3B1.1(c).

The Georgia Indictment

iv.     The base offense level is 14, pursuant to Guideline § 2G1.1(a)(2).

v.     The offense level is increased by two levels because defendant was an organizer, leader, manager, or supervisor of the criminal activity, pursuant to Guideline § 3B1.1(c).

Grouping

vi.     Count One of the Illinois Indictment and the single-count Georgia Indictment are each treated as a separate group, pursuant to Guideline § 3D1.2(d). Count One of the Illinois Indictment has a total offense level of 21, which, pursuant to Guideline § 3D1.4(a), counts as one unit. The Georgia Indictment has a total offense level of 16, which, pursuant to Guideline § 3D1.4(b), counts as one-half of a unit. The total number of units is one and a half. Pursuant to Guideline § 3D1.4, one level is added to the count with the highest offense level, which is Count One of the Illinois Indictment, resulting in a combined offense level of 22.

vii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the

11

government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

viii.     In accordance with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal two and defendant's criminal history category is II:

i.     On or about November 12, 1996, defendant was convicted of theft in the Circuit Court of Cook County, Illinois, and sentenced to three months' supervision. Pursuant to Guideline § 4A1.2(e), defendant does not receive any criminal history points for this conviction.

12

ii. On or about June 29, 2016, defendant was convicted of pimping in the Superior Court of Dekalb County, Georgia, and sentenced to 12 months' imprisonment. Defendant receives two criminal history points for this conviction, pursuant to Guideline § 4A1.1(b).

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 19, which, when combined with the anticipated criminal history category of II, results in an anticipated advisory sentencing guidelines range of 33 to 41 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, defendant acknowledges that, pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to the victims of the offense in an amount to be determined by the Court at sentencing, minus credit for any funds repaid prior to sentencing.

14.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18,

14

United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court. If the Court finds that the defendant is a non-indigent person, defendant further agrees to pay the $10,000 special assessment, assessed pursuant to Title 18, United States Code, Section 3014, after he has satisfied all outstanding Court-ordered fines, orders of restitution, and any other obligation related to victim compensation ordered by the Court and arising from the convictions.

16.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the Illinois Indictment as to defendant.

### Forfeiture

17.     Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property used or intended to be used, in any manner or part, to commit or facilitate commission of the offense.

18.     Defendant agrees to forfeiture of the following specific property to the United States: a 2009 Dodge Challenger, Vehicle Identification Number: 2B3LJ74WX9H583625, bearing Illinois registration E996207, registered to defendant

and Maxim Yegorov. In doing so, defendant admits that the property described above represents property which facilitated the offense. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it.

19.   Defendant acknowledges that on or about May 8, 2017, administrative forfeiture proceedings were commenced against certain property, including a 2009 Dodge Challenger, Vehicle Identification Number: 2B3LJ74WX9H583625, bearing Illinois registration E996207, registered to defendant and Maxim Yegorov. By signing this plea agreement, defendant acknowledges that he had notice of the administrative forfeiture proceeding, relinquishes any right, title, and interest he may have had in this property, withdraws any previously filed claims, and understands that an administrative decree of forfeiture has been entered, or will be entered, thereby extinguishing any claim he may have had in the seized property.

20.   Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

21.   Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not

16

apply to a claim of involuntariness or ineffective assistance of counsel. Defendant further agrees not to challenge or seek review of the civil or administrative forfeiture of any property identified in this agreement subject to forfeiture, and will not assist any third party with regard to such challenge or review.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

22.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 17 CR 299 and in case 19 CR 299.

23.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

24.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count

18

separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.     With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed.

19

Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

25.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

26.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

27.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline

§ 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

28.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

29.     Defendant understands that pursuant to Title 18, United States Code, Sections 3583(d) and 4042(c), the Court must order as an explicit condition of supervised release that defendant register as a sex offender in compliance with the requirements of the Sex Offender Registration and Notification Act. Defendant also understands that he will be subject to federal and state sex offender registration requirements independent of supervised release, that those requirements may apply throughout his life, and that he may be subject to state and federal prosecution for failing to comply with applicable sex offender registration laws. Defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction

on his duties to comply with current or future sex offender registration laws. Defendant nevertheless affirms that he wants to plead guilty regardless of any sex offender registration consequences that his guilty plea may entail.

## Other Terms

30.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

31.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

32.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

33.    Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant

understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

34.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

35.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

36.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE:    April 25, 2019


JOHN R. LAUSCH, JR.                          TIMOTHY DORSEY
United States Attorney                        Defendant


JARED C. JODREY                              JOSHUA B. ADAMS
Assistant United States Attorney             Attorney for Defendant